DAN TAN LAW
Daniel S Tan (Bar No. 275413)
*info@dantanlaw.com*
155 Sansome Street, Suite 500
San Francisco, CA 94104
Telephone: (646) 580-0080

Attorneys for Plaintiffs Marlen Mesutovich Izzetov
and MMI (a minor)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Marlen Mesutovich Izzetov, MMI (a minor)<br><br>Plaintiffs,<br><br>v.<br><br>Tesla, Inc.<br><br>Defendant. | CASE NO. 19-3734<br><br>COMPLAINT FOR STRICT PRODUCTS LIABILITY, NEGLIGENCE, BREACH OF WARRANTY, PROPERTY DAMAGE, PERSONAL INJURY, PAIN AND SUFFERING, DISFIGUREMENT AND SCARRING, AND LOSS OF ENJOYMENT<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs, Mr. Marlen Mesutovich Izzetov ("Mr. Izzetov") and Miss MMI (a minor), by and through his undersigned counsel, files this Complaint against Tesla, Inc. ("Defendant" or "Tesla, Inc."), as follows:

DAN TAN LAW
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THE PARTIES

Plaintiff Mr. Izzetov is a dual citizen of the Russian Federation and Ukraine and resides at 188A, Grazhdanskaya Street, Simferopol, Crimea.

Plaintiff Miss MMI (a minor) is a dual citizen of the Russian Federation and Ukraine and resides at 188A, Grazhdanskaya Street, Simferopol, Crimea.

On information and belief, Defendant Tesla, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 3500 Deer Creek Road, Palo Alto, California 94304, U.S.A.


## JURISDICTION AND VENUE

This is a civil action for products liability, breach of warranty, property damage, and personal injury for personal injuries sustained, including but not limited to pain, suffering, permanent disfigurement and scarring, and loss of enjoyment of life.

This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(2) being a civil action between citizens of a state and the citizens or subjects of a foreign country, and the matter in controversy exceeds US$75,000.  Venue is proper in this judicial district under 28 U.S.C. § 1391.

Venue in this District is proper pursuant to 28 U.S.C. §1391, in that the Defendant or its agents, or certain of them, reside or may be found here, and the Defendant transacts business in this District. 28 U.S.C. § 1391(a)(1), (2).

Dan Tan Law
Attorneys At Law

2

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

1   Defendant Tesla, Inc. is subject to this Court's personal jurisdiction because

2
3   the Defendant is headquartered in this District, has a substantial presence in this

4   District, and conducts a significant portion of its business in this District.

5

6                                   BACKGROUND FACTS

7

8   *Summary of Facts*

9       1.    Plaintiff Mr. Izzetov is the owner of a "Model X", a luxury electric

10
11  vehicle produced by Defendant Tesla, Inc. Mr. Izzetov purchased the vehicle

12  through his agent, Mr. Filonenko, who purchased the vehicle on December 7, 2017

13
14  from a car retailer in Prague, Czech Republic and registered it in his name (the "Tesla

15  Model X"). At all times, Mr. Izzetov possessed and used the vehicle in question.

16
17      2.    At all times relevant to this action, Defendant Tesla, Inc. designed,

18  manufactured, marketed, distributed, sold, leased, and warranted luxury electric

19  vehicles, including the Tesla Model X at issue in this Complaint.

20
21      3.    This Complaint concerns serious, traumatic, scarring, psychological,

22  and personal injuries to Mr. Izzetov's then five-year-old daughter and co-plaintiff

23
24  MMI following the foreseeable use by MMI of the front passenger door of the Tesla

25  Model X that resulted in MMI's finger being trapped, crushed and broken by a

26  powerful, automatically-retracting plastic latch that forms part of the locking

27
28

Dan Tan Law
Attorneys At Law

3

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

mechanism that is built into the metal doorframe of the front passenger door of the Tesla Model X.

4.     Defendant Tesla, Inc. has gained a reputation for pushing the envelope in automotive design.  Over time, and notwithstanding several well-publicized safety issues, Defendant has attracted a loyal following. Indeed, Mr. Izzetov considered himself to be one such loyal customer of Tesla, Inc..

5.     However, the front door locking mechanism on the "Model X" produced by Defendant Tesla, Inc. is defective, and unreasonably dangerous.

6.     Plaintiffs Mr. Izzetov and MMI bring this strict products liability, negligence, breach of warranty, and personal injury action for injuries sustained to MMI, including but not limited to pain, suffering, permanent disfigurement, scarring, loss of enjoyment of life, for property damage incurred during the extraction of MMI's finger from the Tesla Model X by emergency services, and for putative damages.

7.     The products liability action includes claims under theories of strict liability, negligence (including general negligence, gross negligence, and reckless conduct), and breach of warranty, which arise out of Defendant Tesla Inc.'s faulty design, selection, inspection, testing, manufacture, assembly, equipping, marketing, distribution, supply and sale of a defective, and unreasonably dangerous, automobile and automobile door locking mechanism.

DAN TAN LAW
ATTORNEYS AT LAW

4

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

*The Tesla Model X*

8.    This Complaint concerns a dangerous malfunction affecting the front passenger door locking mechanism of the Model X electric vehicle produced by Defendant Tesla, Inc.

9.    The Tesla Model X is an innovative, mid-sized, all-electric, luxury, sports utility vehicle ("SUV").

10.    On its website, Defendant Tesla, Inc. describes the Tesla Model X as "the safest SUV ever built". (https://www.tesla.com/modelx)

*The Tesla Model X's door locking mechanism*

11.    One of the unique features of the Tesla Model X is the design and operation of its doors, which are all powered by electric motors.  Whereas the Tesla Model X's rear doors are of a so-called "falcon wing" design that open upwards, the

DAN TAN LAW
ATTORNEYS AT LAW

5

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING, DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

front driver and front passenger doors are, as with most cars, hinged at the front and open at a conventional angle.

12.   However, the Tesla Model X's front doors differ from more mainstream vehicles in that they employ electric motors so that the doors can open and close with a minimum of human physical effort.

13.   When activated, the Tesla Model X's front doors partially open between 20 degrees and 45 degrees, "depending on obstacles detected by sensors". (Tesla Model X Owner's Manual, p.7).

14.   The front doors of the Tesla Model X can be controlled by a sensor on the door handle, which sends an input to the electric motors that open and close the door.  When operating normally, a deliberate human touch to the door handle will cause the electric motor to open the door to between 20 degrees and 45 degrees.  The human operator can then manually open the door further without the assistance of the electric motor.

15.   At the heart of this Complaint, the door locking mechanism (the "Locking Mechanism") in both the front driver and front passenger doors of the Tesla Model X contains a powerful—and highly dangerous—automatically-retracting plastic latch (the "Latch") that slides into the back edge of the metal doorframe when the Tesla Model X's front door is opened.  The Latch is a moving

DAN TAN LAW
ATTORNEYS AT LAW

6

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

part made of metal and is hollow, with a hole in the middle large enough to fit a human finger.

16.    When the front door operates correctly, the Latch retracts into the Locking Mechanism and is safely contained within the back edge of the doorframe prior to the door opening for the occupant to enter.

17.    However, normal use of the Tesla Model X's front door can also cause a dangerous malfunction that results in the Latch (and the hollow part thereof) being exposed on the back edge of the doorframe—and then automatically retracting into the Locking Mechanism—all while the door is open.

*The Incident*

18.    On May 9, 2018, in the city of Simferopol in Crimea, Plaintiff Mr. Izzetov, his wife Mrs Leila Ismailovna Izzetova, and their two young children were about to get into the Tesla Model X.

19.    Mr. Izzetov entered the Tesla Model X through the front driver's door, which operated normally.  Mr. Izzetov's wife, who was holding the couple's six-month-old younger daughter, was by the passenger door, preparing to enter the vehicle. Plaintiff MMI was standing next to her mother in front of the passenger

DAN TAN LAW
ATTORNEYS AT LAW

7

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

door.  In order to open the passenger door of the Tesla Model X, MMI pressed the passenger door handle that automatically opens the passenger door.

20.    The passenger door opened to approximately 20 degrees in response to MMI's input to the door handle.  MMI then proceeded to manually open the door by pulling the back edge of the front doorframe towards her.

21.    The Locking Mechanism and Latch on the back edge of the doorframe were at the MMI's hand height as she reached out to touch the door.

22.    The Latch should be flush with the back edge of the doorframe whenever the door is open, thereby rendering it safely contained within the Locking Mechanism.

23.    However, unbeknownst to Mr. Izzetov, his wife, or MMI, as a result of a malfunctioning of the Locking Mechanism, the Latch had not safely retracted within the doorframe prior to the door opening.

24.    As a result of placing her hand on the back edge of the door frame, MMI's finger was placed unintentionally in the hollow space of the Latch, which then began to automatically retract into the Locking Mechanism. What effectively happened was that the Latch was set as a trap in the shape of the ring, which then started retracting into the doorframe, crushing and cutting anything that might have been caught in it.

DAN TAN LAW
ATTORNEYS AT LAW

8

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

25.    MMI's finger got trapped in the Latch, which continued to retract automatically into the Locking Mechanism, pulling MMI's finger inside the Locking Mechanism with it so that the top of MMI's finger became embedded inside the Tesla Model X's metal door frame.

26.    MMI screamed in pain as her finger was crushed in the Locking Mechanism.  Such was the force exerted by the Latch as it retracted into the Mechanism, Mr. Izzetov feared that his daughter's finger would be dismembered.

27.    Before the emergency services arrived, Mr. Izzetov tried in vain to release his daughter's finger from the Locking Mechanism using pliers and screwdrivers.

28.    To compound the danger to MMI, the Tesla Model X's automatic door closing mechanism repeatedly activated while MMI's finger was still trapped in the Latch.  Mr. Izzetov and several bystanders therefore had to forcibly hold open the front passenger door in order to prevent it from automatically closing and crushing MMI's arm.

29.    Initially, first responders from Simferopol's emergency services tried to release MMI's finger by removing the bolts in the Locking Mechanism.  When this did not succeed in reducing the pressure of the Latch on MMI's finger, the emergency services had no choice but to cut through the Locking Mechanism itself.

DAN TAN LAW
ATTORNEYS AT LAW

9

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

30.   The cutting operation to release MMI's finger was inherently dangerous, because the sawing occurred approximately one eighth of an inch from MMI's finger.

31.   Ultimately, it took the emergency services in Simferopol two hours using specialist metal-cutting equipment to cut through the Tesla Model X's doorframe and the Locking Mechanism in order to release MMI's finger from the Latch.

32.   However, the emergency services considered that there was no other way to safely release the MMI's finger before she suffered further injury.  By this stage, the MMI was also in a state of shock and needed immediate hospital treatment.

33.   This horrifying and protracted scene was recorded on video by bystanders, including a member of the emergency services.

34.   Having finally cut her finger free of the Tesla Model X, MMI was immediately rushed to hospital, where she was treated for a fracture of her third finger and received stitches.

35.   As a consequence of the Incident, MMI has been left afraid to ride in the Tesla Model X and is scared of car doors in general.

36.   The Tesla Model X was designed, developed, manufactured, tested, marketed, distributed and sold by Defendant Tesla, Inc..   Mr. Izzetov made no alterations to the Tesla Model X.  At the time of the Incident, to the best of Mr.

Izzetov's knowledge, the Tesla Model X was in the same essential condition as when it left Defendant Tesla, Inc.'s control.

37.    Upon information and belief, the Incident and MMI's injuries occurred as a result of defects in the Tesla Model X's Locking Mechanism, including the Latch, which existed at the time of the Incident and about which Defendant Tesla, Inc. knew or should have known.

38.    The injuries sustained by MMI would not have occurred but for the defects present in the Tesla Model X and its component parts on May 9, 2018, as those defects prevented a normal, safe and expected operation of the Locking Mechanism at the time of the Incident and caused MMI's finger to become trapped and crushed in the Latch, causing her third finger to be fractured.

39.    Additionally, the Tesla Model X was damaged during the Incident as a result of the emergency services having to use specialist metal-cutting equipment to free his daughter's finger from the Latch and Locking Mechanism.

40.    Defendant Tesla, Inc. is liable on the basis of products liability, breach of warranty, and personal injury action for injuries sustained.


*Defendant Tesla Inc.'s denial of the existence of a defect or risk of injury*

41.    On May 11, 2018, Plaintiff Mr. Izzetov emailed Defendant Tesla, Inc.'s customer support team.

DAN TAN LAW
ATTORNEYS AT LAW

11

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

42.   In his email, Mr. Izzetov detailed the Incident that resulted in his daughter's injuries.  Mr. Izzetov attached a video of the Incident recorded on a smart phone, photographs of the Incident and MMI's treatment at the hospital, and an x-ray of his daughter's finger that was broken in the Incident.

43.   Mr. Izzetov demanded that Defendant Tesla, Inc. conduct a "most serious investigation" into the Incident "to make sure that none of the other Tesla car owners would find themselves in a similar situation".

44.   Further, Mr. Izzetov stated that he was "open to discussing your proposal for addressing my situation, including compensation", failing which Mr. Izzetov stated that he would escalate the matter, including by commencing a lawsuit if necessary.

45.   On 17 May 2018, Defendant Tesla, Inc. emailed Mr. Izzetov (mistakenly addressing him as Mr. Filonenko) to request further information regarding the Incident.  In response, Mr. Izzetov emailed further information and received an email from Defendant Tesla, Inc. on 18 May 2018 confirming that the Incident was under investigation.

46.   It is response dated May 29, 2018, Defendant Tesla, Inc. reiterated its "deepest sympathy for the traumatizing event your daughter and family had to endure".  Tesla, Inc. also thanked Mr. Izzetov for sending data so that Defendant could investigate the Incident.

DAN TAN LAW
ATTORNEYS AT LAW

12

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

47.    Defendant thereafter proceeded to summarily dismiss Mr. Izzetov's concerns, stating: "After such a thorough investigation by our technicians and discussions with our engineers, we have nevertheless reached the conclusion that your vehicle worked as designed and we therefore cannot take any responsibility for the incident."

48.    Incredibly, Defendant then referred Mr. Izzetov to page 9 of the Tesla Model X Owner's Manual and in particular the following warning:

*Warning: Whenever a front door is partially open (approximately 20°) as you are opening or closing the associated falcon wing door, you MUST keep your hands (or any object) away from the opening edge of the front door. When a falcon wing door passes by a partially opened front door, the distance between the two doors is very narrow. Objects, such as hands or fingers, placed in this area, are not detected by sensors and can therefore become pinched between the doors. To avoid bodily injury, it is a good practice to keep your hands away from the front door whenever you are opening or closing a falcon wing door.*

49.    As is plainly evident, this warning does not concern the operation of the front doors of the Tesla Model X.  Rather, as the language expressly provides, the warning relates to the operation of the front doors in conjunction with the rear "falcon wing" doors.

50.    The warning referred to by Defendant Tesla, Inc. plainly has nothing to do whatsoever with the operation of the Tesla Model X's front doors when being used independently of the rear doors.  Even more blatantly, the warning has nothing to do with the Latch or Locking Mechanism in the front doors.

DAN TAN LAW
ATTORNEYS AT LAW

13

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

51.   At the end of May 2018, Plaintiff Mr. Izzetov had a telephone conversation with Ms. Marjolein Mous, a customer services representative at a Tesla service center in Amsterdam (Burgemeester Stramanweg 122, 1101 EN, Amsterdam, Netherlands).   Ms. Mous offered an apology and unspecified gift on behalf of Defendant Tesla, Inc..   Ms. Mous also promised to call Mr. Izzetov back to discuss compensation, but never did so.

*Tesla dealership tells Plaintiff Mr. Izzetov there is a dangerous defect*

52.   On August 16, 2018, Plaintiff Mr. Izzetov visited the Tesla Motors Store and Service Center in Berlin, Germany ("Tesla Berlin Service Center").

53.   At the Tesla Berlin Service Center, Mr. Izzetov had a conversation regarding the Incident with an employee of the service center called Mr. Patrick Paczkowski, whose job title is "Service Advisor".

54.   Mr. Paczkowski told Mr. Izzetov that Defendant Tesla, Inc. was aware of the malfunctioning Locking Mechanism and Latch that injured MMI during the Incident.   Mr. Paczkowski further stated that Defendant Tesla, Inc. was planning a recall of all Model X vehicles in 2019 so that the defect could be rectified.

55.   In September 2018, an employee of the Tesla Berlin Service Center called Mr. Izzetov and offered to repair free of charge the damage to the Tesla

DAN TAN LAW
ATTORNEYS AT LAW

14

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

Model X caused by the Incident.  Mr. Izzetov refused this offer and stated that he intended to commence legal proceedings against Defendant Tesla, Inc.

56.    Since Mr. Izzetov first made his complaint regarding the Locking Mechanism to Tesla on May 11, 2018, Tesla has not recommended that the vehicle not be driven pending repair of the Locking Mechanism and Latch.

*Correspondence with Tesla's Legal Counsel*

57.    On November 2, 2018, Plaintiff's counsel wrote to Tesla's legal department in Palo Alto requesting that Tesla "work with us to find a solution" regarding the Incident and Plaintiffs' injuries, failing which Plaintiffs would commence this action.   Plaintiff's counsel also provided to Tesla's legal department a video of the Incident and a draft copy of this complaint.  Plaintiff's intent in sending a draft complaint, rather than filing suit immediately, was to engage in a constructive discussion of the issues.

58.    On November 16, 2018, Tesla's Managing Counsel, Mr. Ryan A. McCarthy sent a letter in response to Plaintiff's counsel. Shockingly, Tesla expressed absolutely no concern whatsoever that a five-year old child had somehow suffered injuries using a Tesla vehicle.  Rather, the letter falsely claimed that Mr. Izzetov "refused" to bring the Model X to a Tesla service center for inspection after the Incident.  In fact, as explained above, the Model X was inspected at the Tesla Berlin Service Center on August 16, 2018.  Tesla's letter went on to deny knowledge

DAN TAN LAW
ATTORNEYS AT LAW

15

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING, DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

of the type of malfunction described in the draft complaint, despite Mr. Izzetov's previous correspondence, attaching video evidence, clearly alerting Tesla of the Incident and the nature of the malfunction affecting the Locking Mechanism and Latch.  In addition to gratuitous and irrelevant attacks on Mr. Izzetov's character, Mr. McCarty also made the bizarre claim that the Model X would have to be inspected in San Francisco and that car that was for personal family use would have to be preserved in the same post-incident condition and undriven while Tesla did nothing in response to several complaints by Mr. Izzetov—all transparent tactics designed to prevent the plaintiffs from seeking legal redress for the harm that they had suffered.

59.   Mr. McCarty's response showed no desire on the part of Tesla to work with Mr. Izzetov to identify the problem or to find out how a child nearly lost her finger to a Tesla vehicle.

60.   On December 21, 2018, Plaintiff's counsel wrote back to Mr. McCarthy, expressing astonishment at the callous tone and approach of Tesla's November 16 letter, which was not "befitting of a progressive 'safety-first' company like Tesla, whose primary concern should be its customers and the safe operation of its ground-breaking products".  While expressing disappointment at the nature of Tesla's response, Plaintiff's counsel offered clarificatory information "in order to ensure that you have the complete picture, to encourage Tesla to finally engage

DAN TAN LAW
ATTORNEYS AT LAW

16

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING, DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

constructively with [Plaintiffs], and to urge Tesla to work with [Plaintiff's counsel] to determine if there is indeed a safety issue and why a five-year old somehow managed to be injured in the course of using a Tesla vehicle".

61.   In particular, Plaintiff's counsel explained *inter alia* that: (1) Tesla had knowledge of the existence of the malfunction at issue in this dispute as a result of Mr. Izzetov's email to Tesla dated June 6, 2018 attaching a video capturing the malfunction actually occurring, and the physical inspection of the Model X by the Tesla Berlin Service Center on August 16, 2018; and (2) following the inspection of the Model X at the Tesla Berlin Service Center on August 16, 2018, Mr. Izzetov had declined Tesla's offer – apparently made in final settlement of the dispute – to repair the Model X for free, but without the payment of compensation.   As Plaintiff's counsel stated in the letter, Mr. Izzetov "was within his rights to refuse such an unfair settlement offer".

62.   Plaintiff's counsel ended the December 21 letter to Tesla by emphasizing that Plaintiffs strongly preferred amicable settlement to litigation of the dispute:

> With these clarifications, we ask once more that Tesla work with us to reach an amicable solution to this dispute, including on the issues of fair compensation for the injury to [MMI] and vehicle repair.
>
> Finally, we would respectfully remind you that Mr. Izzetov is in good faith seeking to bring a harmful defect to Tesla'[s] attention so that he and his young daughter are properly compensated and, just as importantly, so that no one else has to go through the ordeal that [MMI] did, or worse. We trust that Tesla's next response will be in the same spirit.

Dan Tan Law
Attorneys At Law

17

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING, DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

63.    On January 9, 2019, Tesla replied to Plaintiff's letter of December 21, 2018.  Tesla stated that "it is highly unfortunate that your client's daughter was injured, and we sincerely hope she has recovered", but went on to insist that there was no defect.  Tesla offered to repair the damaged door "as a goodwill gesture" and stated that it would consider a demand for compensation.

64.    On January 24, 2019, Plaintiff's counsel wrote to Tesla requesting that Mr. Izzetov be granted an in-person meeting at Tesla's offices with (1) a member of Tesla's legal team; (2) a Tesla employee with technical knowledge of the alleged defect or operation of the Locking Mechanism and Latch; and (3) a senior executive from the relevant commercial unit, so that Mr. Izzetov could explain his position and explore resolution of the matter.

65.    The same day, January 24, 2019, Tesla wrote to Plaintiff's counsel to reject Mr. Izzetov's request for an in-person meeting.  Instead, Mr. McCarthy made clear that unless there was new information, there was nothing that the parties could fruitfully discuss:

> Your client is welcome to articulate his position in a letter/email to my attention and I will confer with our relevant business units and engineers to see what we can do if there is new information that causes us to reevaluate the situation.  The issue is fairly clear, as we've discussed in our correspondence, and I've assumed that his position has been relayed by and through you, his counsel, but perhaps there's more he thinks he can shed light on.  Alternatively, if you host a conference call, I suppose I could call in and listen to your client's position and we'll see where that goes.  However, I don't see value in meeting with your client simply so he

DAN TAN LAW
ATTORNEYS AT LAW

18

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

can re-state what he and you have said, and then cause him frustration when we re-state what we've said already, and I'm disinclined to expose my colleagues to that exercise as they are very busy making the safest cars on the road and running our business.

66.    Tesla's refusal to take steps to properly under the incident, to take proper steps to investigate what might have gone wrong, and to address the defect on the Tesla X, and offer any compensation for MMI's injuries leave the plaintiffs with no choice but to commence this action.

<u>COUNT I</u>

(STRICT PRODUCTS LIABILITY)

67.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

68.    At all relevant times herein, Defendant Tesla, Inc. is strictly liable in tort for placing a defective and unreasonably dangerous product into the stream of commerce that causes harm and injury to the person.

69.    At all relevant times herein, the Tesla Model X and its Latch and/or Locking Mechanism was defective and unreasonably dangerous as to its design, manufacture, distribution and warnings, causing the Tesla Model X to be in defective condition that made it unreasonably dangerous for its intended use.

70.    Thus, Defendant Tesla, Inc. is subject to strict liability under the laws of California.

Dan Tan Law
Attorneys At Law

19

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING, DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

71.   At all relevant times herein, the Tesla Model X was being used in an intended and/or reasonably foreseeable manner. Plaintiffs neither misused nor materially altered the Tesla Model X, and upon information and belief, the Tesla Model X was in the same or substantially similar condition that it was in at the time of purchase.

72.   At all times relevant herein, the Tesla Model X is and was defective and unreasonably dangerous because it was designed, manufactured and sold with a Locking Mechanism and Latch that malfunctions, including during the Incident. Tesla manufactured, distributed, and sold the Tesla Model X, the product contained a manufacturing defect when it left Tesla's possession, the plaintiffs were harmed and a substantial factor in causing such harm was the product's defect.

73.   At all relevant times, Defendant Tesla, Inc. had a duty to warn users of the dangers associated with the Tesla Model X and its Latch and/or Locking Mechanism.  However, Defendant Tesla, Inc. failed to provide sufficient or adequate instructions or warnings of potential safety hazards. Tesla manufactured, distributed, and sold the Tesla Model X, the product had potential risks that were known or knowable in light of scientific knowledge that was generally accepted in the scientific community at the time of manufacture, distribution and sale. These potential risks presented a substantial danger when the produce it used or misused in an intended or reasonably foreseeable way. Ordinary consumers would not have

DAN TAN LAW
ATTORNEYS AT LAW

20

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

recognized these potential risks, and Tesla failed to adequately warn or instruct of the potential risks. As a result the plaintiffs were harmed and the lack of sufficient instructions or warnings was a substantial factor in causing name of plaintiff's harm.

74.    At all relevant times herein, Defendant Tesla, Inc. failed to design, manufacture, and/or sell a product that was safe for its intended use, or otherwise. Tesla manufactured, distributed, and sold the Tesla Model X, and the product failed to perform safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way. The plaintiffs were harmed and a substantial factor in causing such harm was the product's failure to perform safely. Alternatively, Tesla fails to prove that the benefits of the product's design outweighs the risks of the design.

75.    As a direct and proximate result of Defendant Tesla, Inc.'s breaches complained herein, Mr. Izzetov suffered property damages and MMI has incurred serious and permanent injuries, including a broken finger, scarring, excruciating physical pain and suffering, mental anguish and emotional distress from the Incident.

COUNT II

(NEGLIGENCE)

76.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

DAN TAN LAW
ATTORNEYS AT LAW

21

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING, DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

77.     At all times relevant herein, Defendant designed, manufactured, inspected, installed and repaired the Tesla Model X and its components, including but not limited to, the Latch and the Locking Mechanism.

78.     At all times relevant herein, Defendant Tesla, Inc. owed Plaintiffs a duty of reasonable care to design, manufacture, supply, install, inspect and repair the Tesla Model X and its components, including the Latch and Locking Mechanism, so that users and occupants would not be exposed to an unreasonable risk of injury during foreseeable use.

79.     At all relevant times herein, as designed, manufactured, supplied, installed, inspected, and repaired by Defendant Tesla, Inc., the Tesla Model X is and was defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because the Latch and/or Locking Mechanism is and was inadequately designed and constructed, and failed to operate in the safe manner that a reasonable consumer would expect in foreseeable use of the Tesla Model X.

80.     At all relevant times, the Defendant Tesla, Inc. was, at a minimum, negligent in designing, manufacturing, supplying, installing, inspecting and repairing the Tesla Model X, and/or failing to provide adequate warning of the substantial danger posed by the Latch and Locking Mechanism during foreseeable use, which ordinary consumers would not have recognized.

DAN TAN LAW
ATTORNEYS AT LAW

22

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

81.   The Defendant Tesla, Inc.'s negligence in developing, designing, manufacturing, supplying, installing, inspecting, testing, promoting, distributing, selling, and/or servicing the Tesla Model X made the Tesla Model X unreasonably dangerous.

82.   At all relevant times, Tesla sold and distributed and continues to sell and distribute Tesla Model X models without providing adequate warnings as to the substantial danger posed by the Latch and Locking Mechanism.

83.   Defendant Telsa, Inc. has failed to comply with its duty to be knowledgeable and to discover risks associated with its product. Even after Mr. Izzetov informed Telsa, Inc. about the defect, Telsa, Inc. has failed to warn its consumers about the defect that has been brought to its attention.

84.   As a proximate and direct result of the Defendant Tesla, Inc.'s negligence, MMI has been injured and damaged as more fully set forth above, in amounts to be determined at trial.

DAN TAN LAW
ATTORNEYS AT LAW

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING, DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

## COUNT III

## (BREACH OF IMPLIED WARRANTIES)

85.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

86.   At all times relevant herein, Defendant Tesla, Inc. is and was a "merchant" with respect to the Tesla Model X at issue in this Complaint.

87.   At all times relevant herein, Defendant Tesla, Inc. manufactured and sold the Tesla Model X as "good" within the meaning of the relevant statutory provisions.

88.   Consequently, at the time of its sale, Defendant Tesla, Inc. impliedly warranted that the Tesla Model X was merchantable, including that it was fit for its ordinary purposes as safe passenger vehicles that it could pass without objection in the trade, and that it was adequately contained, packaged, and labeled.

89.   At all times relevant herein, Defendant Tesla, Inc. breached the implied warranty of merchantability because the Tesla Model X was not fit for the ordinary purposes for which it was anticipated to be used—namely as a safe passenger automobile.

90.   Specifically, the Tesla Model X was unreasonably dangerous and defective because it was designed, manufactured and sold with a powerful, automatically retracting Latch that can malfunction during foreseeable use, thereby

DAN TAN LAW
ATTORNEYS AT LAW

24

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

resulting in the Latch (and the hollow part thereof) being exposed on the back edge of the doorframe – and then automatically retracting into the Locking Mechanism – while the front door is open, including during the Incident, which made the Tesla Model X unfit for its ordinary purpose of providing safe transportation.

91. At all times relevant herein, Defendant Tesla, Inc. further breached the implied warranty of merchantability as the Tesla Model X designed, manufactured and sold by Defendant Tesla, Inc. was equipped with a powerful, automatically retracting Latch that can malfunction during foreseeable use, thereby resulting in the Latch (and the hollow part thereof) being exposed on the back edge of the doorframe – and then automatically retracting into the Locking Mechanism – while the front door is open, including during the Incident, and therefore the Tesla Model X would not pass without objection in the trade.

92. At all times relevant herein, Defendant Tesla, Inc. further breached the implied warranty of merchantability because the Tesla Model X was not adequately contained, packaged, and labeled in that the directions and warnings that accompanied the Tesla Model X did not adequately instruct its owner on the proper use of the Tesla Model X in light of the fact that the Latch can malfunction during foreseeable use, thereby resulting in the Latch (and the hollow part thereof) being exposed on the back edge of the doorframe – and then automatically retracting into

the Locking Mechanism—while the front door is open, thereby causing injury to drivers or passengers, including during the Incident.

93.   As a direct result of Defendant Tesla, Inc.'s breaches of the implied warrant of merchantability complained herein, Mr. Izzetov suffered property damages to his Tesla Model X and MMI has incurred serious and permanent injuries, including broken finger, scarring, excruciating physical pain and suffering, mental anguish and emotional distress from the Incident.

94.   By reason of the foregoing, Plaintiffs are entitled to recover for all general and special damages proximately caused by Defendant Tesla, Inc.'s breaches of the implied warranty of merchantability arising and resulting from the Incident.

## COUNT IV

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

95.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

96.   Defendant Tesla, Inc. acted negligently as detailed above.

97.   As a proximate result of Defendant Tesla, Inc.'s acts as alleged above, Plaintiff MMI suffered severe emotional distress and mental suffering.

98.   Defendant Tesla, Inc.'s negligence was a substantial factor in causing Plaintiff MMI severe emotional distress and mental suffering.

DAN TAN LAW
ATTORNEYS AT LAW

26

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING, DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

<u>COUNT V</u>

(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS –

BYSTANDER)

99.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

100. Defendant Tesla, Inc. acted negligently as detailed above, causing injury to Plaintiff MMI.

101.  Plaintiff Mr Izzetov was present at the scene of the Incident that caused injury to Plaintiff MMI.

102.  Plaintiff Mr Izzetov was aware that the Incident was causing injury to Plaintiff MMI.

103.   As a proximate result of Defendant Tesla, Inc.'s acts as alleged above, Plaintiff Mr Izzetov suffered severe emotional distress and mental suffering.

104.  Defendant Tesla, Inc.'s negligence was a substantial factor in causing Plaintiff Mr Izzetov's severe emotional distress and mental suffering.

DAN TAN LAW
ATTORNEYS AT LAW

27

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

COUNT VI

(DAMAGES)

105.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

106.   Plaintiffs have suffered general and special, incidental and consequential damages as the direct and proximate result of the acts and omissions of Defendant, which damages shall be fully proven at the time of trial, including, but not limited to: medical and medical related expenses, both past and future; medical and pharmaceutical expenses, past and future; wages and economic loss, past and future; emotional distress, and future emotional distress; damages for loss of enjoyment of life, both past and future; and other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of this action.

REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

1.     General damages according to proof;

2.     Medical, hospital, and related expenses according to proof;

3.     Loss of earnings according to proof;

DAN TAN LAW
ATTORNEYS AT LAW

28

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT

4.     Damages to Plaintiffs' property;

5.     Interest accruing from the date of the Incident;

6.     An award to Plaintiffs for their attorneys' fees and costs; and

7.     Such other relief as the Court deems proper.


Dated: June 26, 2019

Respectfully submitted,

DAN TAN LAW
Daniel S. Tan


By

_____
Daniel S. Tan
Attorney     for     Plaintiffs     Marlen
Mesutovich Izzetov and MMI (a minor)

DAN TAN LAW
ATTORNEYS AT LAW

29

COMPLAINT FOR PRODUCTS LIABILITY, BREACH OF
WARRANTY, PERSONAL INJURY, PAIN AND SUFFERING,
DISFIGUREMENT AND SCARRING, LOSS OF ENJOYMENT