Lindsey R. Adams-Hess (#260600)
Lindsey.adams@bowmanandbrooke.com
Chancellor W. Tseng (#322236)
Chancellor.tseng@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA  95110-1364
Telephone:   (408) 279-5393
Facsimile:    (408) 279-5845

Attorneys for Defendant
Tesla, Inc.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| MARLEN MESUTOVICH IZZETOV, MMI (a minor),<br><br>        Plaintiffs,<br><br>vs.<br><br>TESLA, INC.<br><br>        Defendants. | Case No. 5:19-cv-03734-EJD<br><br>Assigned to: Honorable Edward J. Davila<br>Courtroom 4 – 5th Floor<br><br>**REPLY IN SUPPORT OF DEFENDANT TESLA, INC.'S RULE 12(f) MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT**<br><br>Date:         February 6, 2020<br>Time:         9:00 A.M.<br>Courtroom:  4<br><br>Action Filed: June 26, 2019 |

Plaintiffs' Complaint includes what appeared to be an errant reference to "putative" damages (page 4, line 19) that was not included in Plaintiffs' Prayer for Relief. Defendant Tesla, Inc. ("Tesla") moves to strike the reference both because it is nonsensical and, in the event that it was a reference to punitive damages, that there are no grounds pleaded for such a demand. Plaintiffs' Complaint also includes 23 immaterial and unnecessary paragraphs describing and characterizing conduct, communications, and statements made between Plaintiff Marlen Izzetov and Tesla after the incident in which Plaintiff MMI's finger was allegedly caught in a component of the passenger front door in a

Tesla Model X. All of these occurred while Plaintiffs were demanding compensation from Tesla and threatening suit. Tesla also moves to strike these immaterial and inflammatory descriptions of Plaintiffs' post-incident interactions with Tesla and Plaintiffs' baseless characterizations and conclusions regarding Tesla's conduct during that period of time.

In their Opposition to Tesla's motion, Plaintiffs now argue that the alleged *post-injury* conduct in handling Plaintiff Izzetov's demand for compensation supports a request for punitive damages. That is not so. The United States Supreme Court has made clear that acts independent from those upon which liability is premised may not serve as the basis for punitive damages. These 23 paragraphs lack any causal nexus to the Plaintiffs' alleged harm in this matter and cannot serve as the grounds for any demand for exemplary damages. Moreover, the communications and statements to which Plaintiffs point as alleged support for a demand for punitive damages are plainly within the litigation privilege set forth in section 47 of the California Civil Code; liability cannot be premised upon such statements. Finally, because Plaintiffs' Opposition makes clear that their apparent demand for punitive damages is grounded solely on post-incident exchanges with Tesla—which not only do not support such a claim but are protected by California's litigation privilege—it is clear that Plaintiffs do not and cannot plead grounds for a punitive damages request.

To be clear, in this *product liability* lawsuit, Plaintiffs *do not* allege Tesla acted with "malice" or any of the other statutory buzzwords in the *design or manufacture* of the product. And, when challenged by Tesla's Motion, Plaintiffs do not change this posture; instead they insist that Tesla's denial of a pre-litigation claim warrants an imposition of punitive damages. Plaintiffs' argument in opposition to Tesla's motion relies entirely on the fact that Tesla disagreed with Plaintiffs' contention that there was a defect in their vehicle and declined to offer monetary compensation. If this specious theory actually supported a punitive damages demand, then it would stand to reason that any product manufacturer who elects to defend its product against a claim would be exposed to allegations of

"malice" because they did not immediately agree to the claimants' demands for payment. Such an approach is contrary to California law and the Due Process rights afforded by the United States Constitution. There is no defect in the Model X, and Tesla had every right to decline Plaintiffs' pre-litigation demand; it borders on absurd that Plaintiffs would now argue those pre-litigation discussions are grounds for exemplary damages where no other basis for such damages exist. These paragraphs and Plaintiffs' reference to punitive damages should be stricken from the Complaint with prejudice.

I. **ARGUMENT**

**A. Plaintiffs' allegations regarding post-incident statements and communications between Plaintiff Izzetov and Tesla are immaterial, impertinent, and inflammatory.**

i. Standards governing a motion to strike.

Matter in a Complaint is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Matter is "impertinent" if it "do[es] not pertain and [is] not necessary, to the issues in question." *Id.* "The essential function of a Rule 12(f) motion is 'to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Wang v. OCZ Technology Group, Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. 2011) (quoting *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 973 (9th Cir.2010)); *see also Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Plaintiffs cite to only two cases in opposition to Tesla's Motion to Strike portions of their Complaint: *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048 (N.D. Cal. 2004) and *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 873 (N.D. Cal. 2011). In *Platte Anchor Bolt, Inc.*, Judge Walker denied a motion to strike a prayer for attorneys' fees where the court was

able to identify several possible bases under which they could be recovered. *See Platte Anchor Bolt Inc.*, 352 F.Supp. 2d at 1059. In *Shaterian*, the court denied a motion to strike punitive damages where the plaintiff alleged the defendant aided and abetted fraud and that it engaged in "a 'fraudulent' scheme" *giving rise to the plaintiff's cause of action* and that the defendant's conduct was "malicious, oppressive, and/or fraudulent." *Shaterian*, 829 F. Supp. At 889. Neither stand for more than the basic notion that court "often regard motions to strike with disfavor." *Platte Anchor Bolt, Inc.*, 352 F. Supp. At 1057. But more importantly, neither stand for the principle that *post*-incident conduct—which bears no relationship to the plaintiffs' alleged harm—is relevant to their claims or can serve as a basis for a request for punitive damages.

    ii. <u>Ordinary (post-incident) claims-handling statements between Plaintiffs and Tesla are not grounds for a demand for punitive damages for Strict Products Liability.</u>

Plaintiffs contend, in their Opposition, that they seek punitive damages in connection with their cause of action for Strict Products Liability. Opp. at pp. 5-6. In their first cause of action, Plaintiffs set forth an amalgamated claim for Strict Products Liability that blends theories of design defect, manufacturing defect, and failure to warn.[1] But whichever their theory, under California law, a manufacturer is strictly liable in tort only when an article it placed in the market, knowing that it would be used without inspection for defects, proves to have a defect that causes injury to a human being. *See Greenman v. Yuba Power Prods., Inc.*, 59 Cal.2d 57 (1963). Put another way, the factual basis for Plaintiffs' claim for Strict Products Liability begins with the necessary prerequisite that Tesla manufactured the Model X ultimately purchased by Plaintiff Izzetov (*see, e.g.*, Compl. ¶¶ 1, 36, 68,) continues through Plaintiffs' allegations that the Model X was defective in some manner (Compl. ¶¶ 5-8, 15, 17, 38, 68-74) and ends with

---

[1] This cause of action is addressed in Tesla's concurrently filed Motion to Dismiss.

4  5:19-cv-03734-EJD
REPLY IN SUPPORT OF DEFENDANT TESLA, INC.'S
RULE 12(f) MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT

Plaintiffs' allegation that MMI was injured as a result of an alleged defect (Compl. ¶¶ 23-35, 37-38, 75). *None* of the paragraphs that Tesla moves to strike bear on Plaintiffs' claim for Strict Products liability or relate to Plaintiffs' alleged harm. Fed. R. E. 401, 403.

Plaintiffs' argument amounts to a rule imposing on Tesla obligations akin to those placed on insurance carriers to defend their insureds and to not engage in bad faith refusal of an opportunity to settle within policy limits. *Tesla is not an insurance company and has no such obligation.* Rather, Tesla had *no legal obligation* to respond to *any* of Plaintiffs' overtures. Yet even in the case of an insurance carrier's bad failure to settle a claim against its insured, the United States Supreme Court has made clear that acts independent from those upon which liability is premised may not serve as the basis for punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–423 (2003). In *State Farm*, the insurance carrier elected to try a liability case against its insured, rather than attempt to resolve within policy limits, and a jury awarded damages to the plaintiff far exceeding the policy limits. State Farm's insured, Campbell, then sued State Farm for bad faith and sought punitive damages. The trial court permitted Campbell to present evidence of State Farm's alleged national policies bearing on claims handling (which allegedly included a policy of not paying settlements in order to meet corporate financial goals), and the jury awarded punitive damages against State Farm. But the Supreme Court reversed, concluding that the lower courts "awarded punitive damages to punish and deter conduct that bore no relation to the Campbells' harm." *Id.* at 422. It went on to hold that a "defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 423. Thus, despite the Court's explicit disapproval of State Farm's conduct—both within and beyond the Campbells' claims against State Farm for harm—conduct that did not contribute to the plaintiffs' alleged harm cannot serve as a basis for punitive damages.

Based on this holding, the courts of California and other states have confirmed that conduct either not directed at the plaintiffs in the case at bar, or that does not go to the harm allegedly incurred by the plaintiffs, can have no role in supporting a demand for punitive damages. *See, e.g.*, *Holdgrafer v. Unocal Corp.*, 160 Cal. App. 4th 907, 930 (2008) (reiterating that "*State Farm*'s proscription of dissimilar conduct to prove the amount of punitive damages award also applies to evidence that the defendant is guilty of malice, fraud or oppression and is therefore subject to such an award."); *see also Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1279 (2001) (noting that "a survey of other states; jurisprudence indicates that punitive damages are proper when the conduct giving rise to the punitive damages contributes to, or is a cause of, the injury.").

Here, Plaintiffs' Complaint includes 23 extraneous paragraphs detailing Plaintiffs' initial demands for investigation and compensation for Plaintiffs' alleged injuries (Compl. ¶¶ 41-44), characterization and conclusions regarding Tesla's response (Compl. ¶¶ 45-51, 56), descriptions of Plaintiffs' escalating demands and threats of litigation (Compl. ¶¶ 57, 60-62), and additional characterizations and conclusions regarding Tesla's response (Compl. ¶ 58-59, 64-66). That Plaintiffs or their counsel sent demand letters threatening litigation over an alleged prior injury and Tesla did not agree with the claims does not give rise to any new injuries, claims or causes of action. These communications have no bearing on Plaintiffs' cause of action for Strict Products Liability and the allegations contained therein—even when construed in the light most favorable to Plaintiffs for the purposes of this motion—and do not describe events or conduct that contributed to Plaintiffs' harm.

Allegations of post-incident communications between the parties to this litigation do not have an "essential or important relationship to [Plaintiffs'] claim for relief" because the communications themselves are not the basis for Plaintiffs' injuries or claims. They also do not

pertain and are not necessary to the causes of action asserted, yet they pose a clear burden for Tesla in requiring it to substantively respond at the pleadings stage and thereafter. Moreover, Plaintiffs' allegations in paragraphs 41-51 and 55-66 contain inflammatory and prejudicial language such as the use of language like "incredibly; shockingly; expressing astonishment at the callous tone and approach." Compl., ¶¶ 48, 58, 60.  The inclusion of language such as this is burdensome and prejudicial to Tesla, and simply unnecessary. It has nothing to do with the issue of whether a defect in the vehicle caused injury.  The Court should strike these paragraphs.

### B. The California litigation privilege protects pre-litigation communications between Tesla and the Plaintiffs.

Plaintiffs' contention that litigation-related exchanges between themselves and Tesla may serve as a basis for a punitive damages award also violates the California litigation privilege contained in Civil Code section 47. As California's Supreme Court has explained, "the privilege prescribed by section 47(2) has been given broad application" in furtherance "of the public policy it is designed to serve." *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990). The privilege is an absolute one that attaches to any publication that has any reasonable relation to the action and is made to achieve the objects of litigation, even though published outside of the courtroom and no function of the court or its officers. *See Rosenthal v. Irell & Manella*, 135 Cal.App.3d 121, 126 (1982) (citing *Pettitt v. Levy*, 28 Cal.App.3d 484, 489 (1972). Put another way, the litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of litigation; and (4) that have some connection or logical relation to the action." *Silberg*, 50 Cal.3d at 212. This includes pre-litigation communications, such as demand letters. *See Malin v. Singer*, 217 Cal. App. 4th 1282 (2013).

///

In *Malin*, for example, an attorney sent a demand letter and draft of a proposed complaint that contained what the plaintiff contended were extortionate threats to disclose personal information if the plaintiff did not settle a proposed claim. *Id.* at 1288. After receiving the demand letter, Malin sued for civil extortion, among other claims. *Id.* at 1289. Reasoning that the demand letter was logically connected to litigation, the court of appeal affirmed that the letter was protected by the litigation privilege and concluded that plaintiff could not then establish a probability of prevailing on his claims (in order to defeat defendant's anti-SLAPP action) because the litigation privilege precluded liability. *Id.* at 1301.

Here Plaintiffs' allegations are explicit that Plaintiff Izzetov first contacted Tesla to describe MMI's injuries, request an investigation, and request compensation. Compl. ¶¶ 41-44. Plaintiffs' initial statements to Tesla and Tesla's response (characterized by Plaintiffs in paragraphs 45-51 and 56 of the Complaint) are plainly within the scope of California's litigation privilege. The same is true of Plaintiffs' further demand correspondence and communications and Tesla's response to the same. Compl. ¶¶ 57-66. These exchanges are protected by California law and cannot serve as the basis for a demand for punitive damages.

**C. Plaintiffs concede that their demand for punitive damages is based entirely on post-incident, protected exchanges between Plaintiffs and Tesla, and their demand for punitive damages should be stricken without leave to amend.**

Tesla initially sought to strike a reference to "putative damages" contained in page 4, line 19 of the Complaint as nonsensical, immaterial, and impertinent. The reference was not only *not* to *punitive* damages, but there was no request for punitive damages stated the prayer for relief. In an abundance of caution, Tesla also argued that punitive damages are "available to a party who can plead and prove the facts and circumstances set forth in [California] Civil Code section 3294." *Hilliard v. A.H. Robins Co.*, 148 Cal. App. 3d 374, 392 (1983). "To support punitive

damages, the complaint…must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson*, 65 Cal. App. 3d 306, 316–317 (1976); *see also* Civ. Code § 3294.

In opposition to Tesla's request to strike, Plaintiffs now argue that the 23 paragraphs containing allegations of post-incident conduct and communications between Plaintiffs and Tesla are Plaintiffs' grounds for their demand for punitive damages. In so doing, Plaintiffs concede that their Complaint otherwise fails to set out any grounds for such a demand. Because this post-incident conduct cannot serve as a basis for punitive damages, both because it does not relate to Plaintiffs' alleged harm (section I(A) above) and because falls within California's litigation privilege (section I(B) above), Tesla renews its request to strike Plaintiffs' groundless reference to "putative damages" (punitive damages) contained in page 4, line 19 of the Complaint.

## CONCLUSION

Plaintiffs allege injury resulting from an alleged (yet still unclarified) defect in the design, manufacture and/or warnings associated with a Tesla Model X door component. Plaintiffs go further by alleging "malice" based solely on the fact that they attempted to demand not-in-suit compensation from Tesla and —Tesla did not pay them.  Indeed, Plaintiffs rely in part on Tesla's offer of a care package for the allegedly injured child and offer to fix the damaged door as evidence of its "malice."  To conclude that such exchanges may be grounds for the imposition of punitive damages would impose a judicial policy that virtually forces companies to ignore customers' not-in-suit overtures altogether, as a response could otherwise subject them to demands for exemplary damages in litigation.

Post-incident communications between parties and counsel alleged in paragraphs 41–51 and 55–66 of Plaintiffs' Complaint are immaterial and impertinent to the underlying causes of action and claims for relief.  These exchanges have no causal nexus with the Plaintiffs' alleged harm. The communications Plaintiffs rely upon also fall within California's broad litigation

privilege and cannot serve as basis for liability. Because Plaintiffs cite solely to these allegations to support their apparent demand for punitive damages, the Court should also strike the reference to such damages.

Dated: October 17, 2019                                BOWMAN AND BROOKE LLP

                                                    /s/ Lindsey R. Adams-Hess
                                                  Lindsey R. Adams-Hess
                                                  Chancellor W. Tseng
                                                  Attorneys for Defendant
                                                  Tesla, Inc.