UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARLEN MESUTOVICH IZZETOV, et al., <br> Plaintiffs, <br> v. <br> TESLA INC., <br> Defendant. | Case No. 5:19-cv-03734-EJD <br><br> **ORDER GRANTING IN PART & DENIES IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE** <br><br> Re: Dkt. Nos. 12, 13 |

Plaintiffs Marlen Mesutovich Izzetov and Miss MMI (the minor child of Mr. Izzetov) bring suit against Defendant Tesla Inc. alleging, among other things, product liability. Defendant contends that this Court must dismiss Plaintiffs' Complaint for failure to state a claim and/or strike portions of Plaintiffs' Complaint. Having considered the Parties' briefs, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss and **GRANTS** Defendant's motion to strike.[1]

### I. BACKGROUND

#### A. Factual Background

Plaintiffs, both Ukrainian citizens, bring suit for damages arising out of incident, that occurred in Crimea, involving a Tesla Model X. *See* Complaint for Strict Products Liability, Negligence, Breach of Warranty, Property Damage, Personal Injury, Pain and Suffering

---

[1] Pursuant to N.D. Cal. Civ. L.R. 7-1(b), this Court found this motion suitable for consideration without oral argument. *See* Dkt. 23.

Case No.: 5:19-cv-03734-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE
1

Disfigurement and Scarring, and Loss of Enjoyment ("Compl."), Dkt. 1.  Specifically, on May 9, 2018, Plaintiffs allege that as they were getting into their Tesla, Plaintiff MMI's finger became caught in the vehicle's door-locking mechanism. *Id.* ¶¶ 19–20.

The Tesla Model X's doors are unique—they are all powered by electric motors.  Compl. ¶ 11.  The rear doors of the car are of a "falcon wing" design.  *Id.*  These doors open upwards.  In contrast, the front doors, much like on a conventional vehicle, are hinged at the front and open outwards.  *Id.*  These front doors, however, have electric motors built-in such that the doors can open and close with minimal physical effort.  *Id.* ¶ 12.  When activated, these front doors can automatically open between 20 to 45 degrees (the breadth depends on whether any obstacles are detected by the sensors).  *Id.* ¶ 13.  Once a person "presses" the exterior door handle, the door will open.  However, if the electric door motor senses resistance, an "ice breaker" deploys.[2]  Dkt. 13.  The ice breaker senses external pressure to the door (like an ice formation between the door and the body mounted seals) and "breaks" any resistance to help the door motor open the door.  *Id.* at 3.  The ice breaker is rectangular in shape, with a hollow center.  The ice breaker is supposed to retract back into the frame of the door after it is deployed.  Compl. ¶¶ 15–17.

On May 9, 2018, when Plaintiff MMI pressed the front door handle to open the right front door, the door opened approximately 20 degrees.  *Id.* ¶¶ 19–20.  Plaintiff MMI proceeded to manually open the door by pulling the back edge of the front doorframe towards her.  *Id.* ¶ 20.  The ice breaker was at Plaintiff MMI's hand height as she reached out to touch the door.  *Id.* ¶ 21.  As Plaintiff MMI placed her hand on the back edge of the door frame, her finger was placed in the hollow space of the ice breaker, which had not safely retracted into the doorframe.  *Id.* ¶¶ 22, 24.  Once her finger was in the ice breaker, the ice breaker began to automatically retract.  As a result, Plaintiff MMI's finger was trapped inside the ice breaker.  *Id.* ¶¶ 24–25.  Plaintiff MMI's finger allegedly became embedded inside the Tesla's metal door frame.  *Id.* ¶ 25.  Plaintiff Izzetov tried

---

[2] Plaintiffs refer to this as "the locking mechanism" throughout their Complaint.  *See* Compl. ¶ 15. Defendant clarifies the actual piece at issue is called an "ice breaker."

Case No.: 5:19-cv-03734-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE
2

to release his daughter's finger, but could not. *Id.* ¶ 27. Ultimately, emergency services had to use special metal-cutting equipment to cut through the Tesla's doorframe and ice-breaker to release Plaintiff MMI's finger from the door. *Id.* ¶ 31. It took responders two hours to free Plaintiff MMI's finger. *Id.*

After the incident, Plaintiff Izzetov repeatedly asked Defendant to investigate the issue. *See id.* ¶¶ 41–46. Defendant allegedly refused to undertake any serious investigation of the incident or Plaintiff Izzetov's safety concerns. *Id.* ¶¶ 47–51. Plaintiff hired counsel, who wrote to Defendant's legal department requesting that Defendant work with Plaintiffs' to solve the issue with Defendant's Tesla. *Id.* ¶ 57. Defendant's legal department, in response, allegedly (1) engaged in attacks on Plaintiff Izzetov's character, (2) disclaimed any knowledge of the defect even though Plaintiff Izzetov had sent videos of the incident and the operation of the device to Defendant, (3) falsely claimed that Plaintiff Izzetov refused to bring his vehicle for inspection, (4) stated that the car had to be brought to San Francisco at Plaintiffs' expense, and (5) accused Plaintiff Izzetov of evidence spoliation. *Id.* ¶ 58.

### B. Procedural History

On June 26, 2019, Plaintiffs filed their Complaint, in which they alleged six claims: a strict product liabilities claim, negligence, breach of implied warranties, negligent infliction of emotional distress, negligent infliction of emotional distress to a bystander, and damages. On September 26, 2019, Defendant filed a motion to dismiss Plaintiffs' Complaint (this motion includes a motion for a more definite statement). Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint ("MTD"), Dkt. 13. Plaintiffs filed an opposition to Defendant's motion to dismiss on October 10, 2019. Opposition to Defendant Tesla's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint ("MTD Opp."), Dkt. 17. On October 17, 2019, Defendant filed a reply brief. Reply in Support of Defendant Tesla, Inc.'s Rule 12(b)(6) Motion to Dismiss ("MTD Reply"), Dkt. 21.

On September 26, 2019, Defendant also filed a motion to strike portions of Plaintiffs' Complaint. Rule 12(f) Motion to Strike Plaintiffs' Complaint ("MTS"), Dkt. 12. Plaintiffs filed

1  an opposition to Defendant's motion to strike on October 10, 2019. Opposition to Defendant Tesla's Rule 12(f) Motion to Strike Plaintiffs' Complaint ("MTS Opp."), Dkt. 18. On October 17, 2019, Defendant filed a reply brief. Reply in Support of Defendant Tesla, Inc.'s Rule 12(f) Motion to Strike Portions of Plaintiffs' Complaint ("MTS Reply"), Dkt. 20.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Federal Rule of Civil Procedure 8(a)(2)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The requirement that the court "accept as true" all allegations in the complaint is "inapplicable to legal conclusions." *Id.* If there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible, the "plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Dismissal can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### B. Motion for a More Definite Statement

Federal Rule of Civil Procedure 12(e) permits a party to move for a more definite statement of a pleading that is so "vague or ambiguous" that the party cannot prepare a response. In other words, if the allegations in the pleading are so bare that they fail to provide the defendant with sufficient notice, the court can grant a motion for a more definite statement. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Hillblom v. Cty. of Fresno*, 539 F. Supp. 2d 1192, 1202 (E.D. Cal. 2008) (noting that a motion for a more definite statement is proper if the "defendant cannot frame a responsive pleading"). A Rule 12(e) motion is designed to strike unintelligibility rather than lack of detail. *Hillblom*, 539 F. Supp. 2d at 1202. Thus, so long as the

Case No.: 5:19-cv-03734-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE

4

pleadings provide a "short and plain statement" of the claim showing that the pleader is entitled to relief, a Rule 12(e) motion should be denied. *See* Fed. R. Civ. P. 8(a)(2).

### C. Motion to Strike

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to the trial." *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). Motions to strike are generally disfavored. *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). A motion to strike should only be granted if it is clear that the matter sought to be stricken has no possible bearing on the subject matter of the litigation. *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("'Immaterial matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." (citation omitted)). Statements that do not pertain, and are not necessary, to the issues in question are impertinent. *Id.* If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion to strike. *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057. Indeed, just as with a motion to dismiss, the court should view the pleading sought to be struck in the light most favorable to the nonmoving party. *Id.*

### III. DISCUSSION

Defendant brings three motions: (1) a motion to dismiss, (2) a motion for a more definite statement, and (3) a motion to strike. The Court addresses each motion in turn.

### A. Motion to Dismiss

Defendant makes three arguments in its motion to dismiss. First, Defendant argues that

Case No.: 5:19-cv-03734-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE
5

Plaintiffs' Complaint fails to adequately plead a cognizable strict products liability theory. MTD at 4–6. Second, Defendant contends that Plaintiffs lack the requisite vertical privity needed to maintain an implied warranty cause of action. *Id.* at 6. Finally, Defendant argues that Plaintiffs have failed to adequately allege any plausible basis for their prayer for attorneys' fees. *Id.* at 7. The Court addresses these arguments below.

### 1. Plaintiffs' Strict Liability Claim

Plaintiffs allege in Count I of their Complaint that Defendant is "strictly liable in tort for placing a defective and unreasonably dangerous product into the stream of commerce that causes harm and injury to the person." Compl. ¶ 68. Defendant argues that Plaintiffs incorrectly "blend" three possible theories for product liability—design defect, manufacturing defect, and failure to warn—in the Complaint. MTD at 4. In Defendant's view, it is improper for Plaintiffs to not specify which theory they are pursuing. *Id.* Defendant also takes issue with the fact that these theories are inconsistent with each other. *See* MTD Reply at 8 ("Plaintiffs' have not pled theories of products liability in the alternative. Instead, Plaintiffs jumbled together three inconsistent theories of products liability in a single cause of action.").

Plaintiffs, however, are allowed to pursue alternative, cumulative, or inconsistent theories and claims. *See* Fed. R. Civ. P. 8(d)(2)–(3). "Courts have repeatedly held that two alternative and contradictory claims do not make either claim implausible under [Rule] 12." *See, e.g.*, *Rouch v. NGB Mkts., Inc.*, 2014 WL 12629931, at *1 (N.D. Cal. Mar. 18, 2014); *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1042 (N.D. Cal. 2018) ("A defendant is not entitled to have a cause of action dismissed for failure to state a claim simply because it conflicts with another cause of action." (quotation marks and citation omitted)). At a later stage, Plaintiffs may be forced to elect among these claims. However, at *this* stage, Plaintiffs may plead in the alternative.

Defendant next argues that Plaintiffs have failed to allege the elements of a manufacturing defect claim because Plaintiffs have "not alleged that the manufacture of the [Tesla's] locking mechanism deviated from design of the manufacturing specifications" or that the Tesla's locking

mechanism deviated from "similar locking mechanisms from the same line of vehicles."[3] MTD at 4–5. Plaintiffs, however, need not specifically allege that the manufacture of the Tesla at issue deviated from the design specification or from the manufacture of other Teslas. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that a plaintiff need not allege "specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief"). Indeed, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Pursuant to *Twombly* and *Iqbal*, Plaintiffs' claim that the Tesla had a design defect is facially plausible. Plaintiff has alleged in Paragraph 72 of the Complaint that:

> At all times relevant herein, the Tesla Model X is and was defective and unreasonably dangerous because it was designed, ***manufactured and sold with a Locking Mechanism and Latch that malfunctions***, including during the Incident. Tesla manufactured, distributed, and sold the Tesla Model X, ***the product contained a manufacturing defect when it left Tesla's possession***, the plaintiffs were harmed and a substantial factor in causing such harm was the product's defect.

Compl. ¶ 72 (emphasis added). From the allegation that the Tesla was manufactured with a malfunctioning part, the Court can draw the reasonable inference that Defendant allegedly manufactured a car with a design defect. *See Iqbal*, 556 U.S. at 678. Hence, at present, Plaintiffs' allegations that the car was defective are sufficient to support Plaintiffs' design defect claim. Accordingly, Defendant's request to dismiss Plaintiffs' design-defect strict liability claim is **DENIED.**

### 2. Requirement of Vertical Privity

Plaintiffs next allege, in Count III, that Defendant breached the implied warranty of merchantability. Compl. ¶¶ 85–94. Defendant argues that this claim must be dismissed because

---

[3] The Court does not read Defendant's motion to dismiss or reply as making this argument as to the other two strict liability claims, *i.e.* design defect or failure to warn.

Case No.: 5:19-cv-03734-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE
7

Plaintiffs are not in vertical privity with Tesla. MTD at 6.

Under California Commercial Code section 2314, the implied warranty provision invoked in Plaintiffs' Complaint, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). A buyer and seller stand in privity if they are adjoining links of the distribution claim. *Id.* (citing *Osborne v. Subaru of Am., Inc.*, 243 Cal. Rptr. 815, 820 n.6 (Ct. App. 1988)). Accordingly, an end consumer who buys from a retailer, rather than directly from the manufacturer, is not in privity with the manufacturer. *Id.*

There are some exceptions to this rule. The first arises when the plaintiff relies on written labels or advertisements of a manufacturer. *See Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048–49 (Cal. 1954) ("Another possible exception to the general rule is found in a few cases where the purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and recovery from the manufacturer was allowed *on the theory of express warranty* without a showing of privity." (emphasis added)). The other exceptions arise in special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser. *Clemens*, 534 F.3d at 1023 (collecting cases).

There is no dispute that Plaintiffs failed to allege vertical privity. *See* Compl. ¶ 1 ("Mr. Izzetov purchased the vehicle through his agent, Mr. Filonenko, who purchased the vehicle on December 7, 2017 from a car retailer in Prague, Czech Republic . . . ."). Plaintiffs instead argue that their implied warranty claim fits within the first exception to the vertical privity rule. Specifically, Plaintiffs argue their implied warranty claim fits within the first exception because they relied on Defendant's advertising statements that the Model S SUV was the "safest SUV ever." MTD Opp. at 7–8; *see also* Compl. ¶ 10. This first exception, however only applies to express warranty claims. *See Burr*, 268 P.2d at 1048–49; *see also Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 853–54 (N.D. Cal. 2018) ("[*Burr*] did *not* recognize an exception to privity in implied warranty claims . . . .").

Case No.: 5:19-cv-03734-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE
8

This Court is unable to create a new exception that would permit Plaintiffs' implied warranty claim to proceed. *See Clemens*, 534 F.3d at 1023–24 ("California courts have painstakingly established the scope of the privity requirement under California Commercial Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to it."). The lack of vertical privity requires the dismissal of Plaintiffs' implied warranty claim. *Zeiger*, 304 F. Supp. 3d at 854. The Court holds that amendment would be futile as Plaintiffs have already alleged that they received their Tesla from a retailer and not from Tesla directly. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile."). Accordingly, Plaintiffs' implied warranty claim is **DISMISSED with prejudice**.

### 3. Basis for Attorneys' Fees

Plaintiffs also seek attorneys' fees and costs. Compl. at 29 (prayer for relief). Defendant argues that Plaintiffs have not alleged a plausible basis for fees. MTD at 7.

The "basic point of reference" when considering the award of attorney's fees is "the bedrock principle known as 'the American Rule.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253–52 (2010). This rule dictates that each litigant "pay his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Id.* at 253 (collecting cases). Defendant argues that because no statute or contract supports Plaintiffs' request for attorneys' fees, Plaintiffs have failed to allege sufficient facts to support their request for fees.

California Code of Civil Procedure section 1021.5, however, allows a court to award fees to a successful party "in any action which has resulted in the enforcement of an important right affecting the public interest." Plaintiffs argue that this provision supports their request for fees. MTD Opp. at 9. Curiously, Defendant does not respond to this argument. *See generally* MTD Reply. This is likely because Defendant's attorneys' fees arguments "border on frivolous." *Portillo v. ICON Health & Fitness, Inc.*, 2019 WL 6840759, at *5 (C.D. Cal. Dec. 16, 2019). Courts have held that there is no requirement to plead requests for section 1021.5 attorneys' fees

Case No.: 5:19-cv-03734-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE
9

in a complaint at all. *See Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*, 249 Cal. Rptr. 3d 309, 330 (Ct. App. 2019) (affirming award of attorneys' fees under section 1021.5 even where the plaintiff's prayer contained only a boilerplate request for "such damages and other and further relief as the Court deems just and proper"); *Snatchko v. Westfield LLC*, 114 Cal. Rptr. 3d 368, 391 (Ct. App. 2010) ("'There is *no requirement that the intent to seek attorney fees under section 1021.5 must be pleaded in the underlying action.*'" (citation omitted)). Accordingly, Defendant's motion to dismiss Plaintiffs' request for attorneys' fees and costs is **DENIED**.

### B. Motion for a More Definite Statement

In the alternative to its motion to dismiss, Defendant moves for a more definite statement as to Plaintiffs' product liability and negligence claims. MTD at 8–10. Defendant argues, pursuant to Rule 12(e), that these claims are vague and ambiguous. Specifically, Defendant argues that because Plaintiffs plead an "amalgamation of three [inconsistent] theories for product liability," which they base their negligence claims on, the pleadings "fail the 'notice' standard of Rule 8 of the Federal Rules of Civil Procedure." MTD at 9; *see also* MTD Reply at 8 ("Tesla can only guess as to which of the three products liability theories Plaintiffs are asserting.").

Rule 12(e) motions are "disfavored and rarely granted." *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035, 1045 (N.D. Cal. 2009) (quoting *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). The rule is aimed at unintelligibility. This means that a motion for a more definite statement is only granted when the defendant cannot "understand the substance of the claim asserted." *Id.* In other words, the pleading must be so nonsensical that the defendant cannot file *any* type of responsive pleading. *See* Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party *cannot reasonably prepare a response*." (emphasis added)). Defendant has not met this standard, as evidenced by the motion to dismiss brought *with* the motion for a more definite statement. Defendant has filed a responsive pleading; the motion to

1    dismiss responds to the Complaint. Defendant thus cannot now claim that the Complaint is "so

2    vague" that it cannot frame a responsive pleading. *See Beery v. Hitachi Home Elecs. (Am.), Inc.*,

3    157 F.R.D. 477, 480 (C.D. Cal. 1993),

4        Moreover, it is apparent from Defendant's motion and its reply brief that it understands the

5    issues at hand. Indeed, Defendant has not only identified the theories of product liability at

6    issue—failure to warn, defective design, and manufacturing defect—but also identified where

7    these theories can be found in the complaint. *See* MTD at 8–9. Hence, Defendant is on "notice"

8    as to which theories are pled against it and why. *See* Compl. ¶¶ 1–40 (establishing factual

9    background); *Id.* ¶ 72 (stating that Tesla had manufacturing defect); *Id.* ¶ 73 (stating that Tesla had

10   a duty to warn consumers of the dangers associated with the doors but failed to do so); *Id.* ¶ 74

11   (alleging that the Tesla Model X had a defective design).

12       Likewise, Defendant's contention that Plaintiffs' negligence claims are vague is

13   nonsensical. The Complaint plainly bases the negligence claim on Defendant's alleged failure to

14   exercise "reasonable care." *Id.* ¶ 78. The Complaint thus identifies the issues at hand and

15   provides Defendant notice of the claims against it. *See Berry*, 157 F.R.D. at 480 ("If the detail

16   sought by a motion for more definite statement is obtainable through discovery, the motion should

17   be denied."). Accordingly, Defendant's motion for a more definite statement is **DENIED.**

18       **C. Motion to Strike**

19       Defendant next seeks to strike portions of Plaintiffs' Complaint. MTS at 2. Specifically,

20   Defendant seeks to strike:

21   - Plaintiffs' reference to "putative damages"[4] on Page 4, Line 19;

22   - Paragraphs 41 through 55 of the Complaint; and

23   - Paragraphs 55 through 66 of the Complaint.[5]

---

[4] The Parties both indicate that Plaintiffs meant "punitive damages" rather than "putative damages." *See* MTS at 3; MTS Opp. at 4. A typo hardly counts as "redundant, immaterial, impertinent, or scandalous" material. Fed. R. Civ. P. 12(f).

[5] Defendant's request is nonsensical. It requests paragraphs 41 through 55 be struck and states that these paragraphs run from page 11, line 27 through page 14, through line 8. That is an error.

Defendant argues that these pleadings are immaterial, impertinent, and nonsensical. *Id.*

In California, punitive damages are available in any action for breach of a non-contractual obligation where it is proven "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Code Civ. Proc. § 3294(a). Plaintiffs argue that they have plead facts showing that Defendant acted with malice and oppression and cite Paragraphs 41–66 as support. These paragraphs recount Plaintiff Izzetov's and Plaintiffs' counsel's alleged interactions with Defendant after the finger-incident. These paragraphs therefore recite *post*-incident conduct. Indeed, their entire focus is Defendant's alleged refusal to settle with Plaintiffs' claims. *See, e.g.*, Compl. ¶ 59 (alleging that Defendant's response to Plaintiffs' communications showed that Defendant had no desire to work with Plaintiffs to identify and fix the problem).

Defendant's post-incident behavior has no bearing on Plaintiffs' claims—Defendant had no legal obligation to respond to any of Plaintiffs' overtures. Tellingly, Plaintiff does not provide any precedent to the contrary. By the Court's own research, outside the insurance context, where an insurer acts in bad faith by refusing an insured's reasonable settlement offer, there is no obligation to engage in good faith settlement talks. *Compare Cont'l Cas. Co. v. U.S. Fid. & Guar. Co.*, 516 F. Supp. 384, 391 (N.D. Cal. 1981) (citing *Comunale v. Traders & Gen. Ins. Co.*, 328 P.2d 198, 202 (Cal. 1958)) (noting that in the insurance context, the insurer must engage in good faith settlement talks), *with State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ("A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business.").

Moreover, as argued by Defendant, these paragraphs fall squarely within California's Litigation Privilege, California Civil Code § 47(b). "The litigation privilege 'grants absolute immunity from tort liability for communications made in relation to judicial proceedings.'" *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 600 (9th Cir. 2010) (quoting *Jarrow Formulas,*

---

Page 14, line 8 stops at paragraph 51 not paragraph 55. Further complicating the problem is the fact that the pleading paper is misaligned. For ease, the Court uses Defendant's request to strike paragraphs 41 through 66 rather than the provided page numbers and line markers.

*Inc. v. LaMarche*, 74 P.3d 737, 743 (Cal. 2003)). The privilege encourages open communication by eliminating the threat of liability for communications made during all kinds of "truth-seeking proceedings." *Silberg v. Anderson*, 786 P.2d 365, 369–70 (Cal. 1990. "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* at 369. Hence, "communications with 'some relation' to an *anticipated* lawsuit" fall within the privilege. *Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*, 2020 WL 10828624, at *4 (N.D. Cal. Mar. 6, 2020). This privilege is absolute and applies to all torts, save malicious prosecution. *Silberg*, 786 P.2d at 370–71; *Am. Generalizations. Life Ins. Co. v. James*, 2015 WL 730010, at *4 (N.D. Cal. 2015) ("California courts have given 'judicial proceeding' an expansive definition, and have found that settlement negotiations fit within the section 47(b) privilege.").

*Malin v. Singer*, 159 Cal. Rptr. 3d 292 (Ct. App. 2013) is instructive. There, the California Court of Appeal held that demand letters are protected by the litigation privilege. *Malin*, 159 Cal. Rptr. 3d at 306. In 2011, an attorney sent a demand letter and a draft of complaint to Mr. Malin (the plaintiff). *Id.* at 295. The plaintiff alleged that the demand letter contained an "extortionate threat." *Id.* Specifically, the plaintiff alleged that the letter threatened to expose personal information if the plaintiff did not settle a proposed claim. *Id.* Pursuant to the letter, the plaintiff sued the attorney for, among other things, civil extortion. *Id.* The trial court held that the litigation privilege did not apply and refused to strike the sexual misconduct allegations from the plaintiff's compliant. *Id.* at 306. The Court of Appeal, however, reversed that decision and held that the demand letter was protected by the litigation privilege because it was "logically connected to litigation that was contemplated in good faith." *Id.*

Likewise, here, Paragraphs 41 through 66 are protected by the litigation privilege. These paragraphs concern Plaintiffs' attempt to settle this case and Defendant's response to Plaintiffs' offers. *Am. Generalizations. Life Ins. Co.*, 2015 WL 730010, at *4 (noting that settlement

Case No.: 5:19-cv-03734-EJD
ORDER GRANTING IN PART & DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE
13

negotiations fit within the section 47(b) privilege). From the start of the negotiations, there was always a risk of litigation. Indeed, the Complaint alleges that from the first communication with Defendant, Plaintiffs intended to "commenc[e] a lawsuit if necessary." Compl. ¶ 44. This intention remained throughout the negotiations. *See, e.g., id.* ¶ 55 ("Mr. Izzetov refused this offer and stated that he intended to commence legal proceedings . . . ."); *Id.* ¶ 57 (providing Defendant with a draft copy of the complaint in an attempt to settle). Hence, there can be no doubt that Paragraphs 41 through 66 reflect good-faith communications with "some relation" to an anticipated lawsuit.

Because these paragraphs are protected by the litigation privilege, they cannot support Plaintiffs' request for punitive damages. They are thus "immaterial" to Plaintiffs' request for punitive damages. These paragraphs also do not support Plaintiffs' strict liability or negligence claims as they have no bearing on the manufacture or design of the Tesla. These paragraphs are therefore also immaterial to Plaintiffs' tort claims. Accordingly, because it is clear that the material sought to be struck has no essential or important relationship to any of Plaintiffs' claims, Defendant's request to strike Plaintiffs' reference to "putative damages" on Page 4, Line 19 and Paragraphs 41 through 66 of the Complaint is **GRANTED**. *See Platte Anchor Bolt*, 352 F. Supp. 2d at 1057. However, because granting Plaintiffs an opportunity to amend would not be futile, cause undue delay, or unduly prejudice Defendant, the Court grants leave to amend. *Leadsinger, Inc. v. Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED in part and DENIED in part**. Defendant's motion to strike is **GRANTED with leave to amend**. Plaintiffs may file an amended complaint by **May 14, 2020.** Plaintiffs may not add new claims or parties without leave of the Court or stipulation by the Parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: April 6, 2020

EDWARD J. DAVILA
United States District Judge